UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 10-60263-CV-LENARD/TURNOFF

ERNESTO CABRERA and CHRISTOPHER
STEPHENSON, on their own behaves and
others similarly situated,

      Plaintiffs,
vs.

UPS SUPPLY CHAIN SOLUTIONS, INC., a
foreign profit corporation,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for an Order Permitting Supervised Notice of this Action to Potential Opt-In Plaintiffs and Conditional Certification of this Case as a Collective Action **[D.E. 33]**, and an Order of Referral entered by the Honorable Joan A. Lenard on March 22, 2010. **[D.E. 35 ]**. A hearing on this Motion **[D.E. 33]** took place before the undersigned on Wednesday, June 2, 2010.

Upon review of the Motion **[D.E. 33]**, the Response **[D.E. 78]**, related pleadings, hearing argument from counsel, and being otherwise duly advised in the premises, the undersigned makes the following findings.

### I. Background

Plaintiffs Ernesto Carrera and Christopher Stephenson ("Plaintiffs") originally filed their Complaint against UPS Supply Chain Solutions, Inc. ("Defendant") in February 2010. **[D.E. 1]**. An Amended Complaint was later filed on March 15, 2010. **[D.E. 23]**. Defendant is a subsidiary of United Parcel Service, Inc., and a sister company to the UPS "Brown" package delivery company. **[D.E. 78]**.

Defendant and UPS Brown are two separate, wholly-owned subsidiaries of their parent company, United Parcel Service, Inc. Id. Defendant has hundreds of distribution centers throughout the U.S. and abroad. Id. Plaintiffs are current or former driver/couriers who provided pick-up and delivery services for Defendant's Service Parts Logistics Unit – one of Defendant's many service offerings. Id.

As of the date of the hearing,[1] approximately thirty-one (31) additional putative plaintiffs have joined this litigation by filing Notices of Consent. The Amended Complaint alleges, among other things, violations of the Fair Labor Standards Act (unpaid overtime), 29 U.S.C. §§ 201 ("FLSA"), violations of Fla. Stat. §448.110 (failure to pay minimum wage), and breach of contract. **[D.E. 23]**. Defendant denies that Plaintiff was its employee for purposes of the FLSA, denies the allegations in the Amended Complaint, and opposes the instant Motion.

## II. Instant Motion

Plaintiffs seek a conditional certification of this case as a collective action on behalf of all current and former similarly situated delivery drivers nationwide, employed by Defendant within the last three (3) years who did not receive minimum wages for hours worked and full and proper payment of "time and a half" for overtime wages. Plaintiffs also seek court supervised notice.

In this connection, Plaintiffs have each filed individual Affidavits, as well as the affidavits/declarations of the additional "Opt-In Plaintiffs" who have expressed their desire to join this action. Plaintiffs base their claim on grounds that Defendant operated its business through the use of multiple affiliates or subsidiaries nationwide throughout the United States, all of whom are subject to the same operating procedures, and that none of the drivers who worked for these entities were paid

---

[1] The Court notes that Notices continue to trickle in on a daily basis. However, this Report is limited to the state of the record as of the date of the hearing.

overtime and/or minimum wage. Carrera Aff. **[D.E. 33-1]**. Plaintiffs further allege that they are aware that other drivers were paid in the same manner, worked the same hours, and were subject to the same rules. See Id. at ¶ **5]**.

Plaintiffs specifically claim that they (and others similarly situated) routinely worked over forty (40) hours per week and were typically paid in one of two ways: (1) a lump sum amount for deliveries with within a certain radius; or (2) an amount per mile for stops outside of that certain radius. According to Plaintiffs, this pay structure was non-negotiable. Id. at ¶¶ 8, 20.

The putative plaintiffs are or were delivery drivers that worked *via* a centralized dispatch center; they were classified as independent contractor couriers for Defendant's operations. Most of them worked out of Miami-Dade and Broward Counties. **[D.E. 23]**. Some Plaintiffs worked in other locations; i.e., Virginia, New York, and New Jersey. Plaintiffs (named and putative) further claim that they were mis-classified as "independent contractors," and a result are due unpaid overtime compensation and overtime minimum wages. Carrera Aff. **[D.E. 33, ¶ 6]**.

As of the date of the hearing, the following individuals have filed Notices of Consent to Join and supporting Affidavits:[2] Norma Torres **[D.E. 7, 19, 29]**, Juan Fuentes **[D.E. 9, 26]**, Noel Bell **[D.E. 4, 10, 30]**, Frederick Spraggs **[D.E. 4, 11, 28]**, Everald Harris **[D.E. 4, 12, 27]**, Diego Lopez **[D.E. 13, 25]**,Felix Morales **[D.E. 6, 14, 24]**, Wayne Allen **[D.E. 5, 15]**, Michael Amoako **[D.E. 46]**, John Barrant **[D.E. 37]**, Hassan Oubihi **[D.E. 44, 45]**, Cesar Estrada **[D.E. 36]**, Juan Espinosa **[D.E. 72]**, Badia Holguin **[D.E. 74]**, Luis A. Perez **[D.E. 75]**, Saleen Araby **[D.E. 76]**, Alejandro Tejeda **[D.E. 77]**, Maxwell Okwesi **[D.E. 81]**, Jorge Vittini **[D.E. 83]**, Vilma Tolentino **[D.E. 84]**, Sabil Salatin **[D.E. 85]**,

---

[2]The Court notes that the following potential putative class members have not filed Affidavits as of yet; they are: Vilma Tolentino **[D.E. 84]**, Sabil Salatin **[D.E. 85]**, Kamal Ahmed **[D.E. 101]**, and Michael Levine **[D.E. 102]**.

Juana Vargas **[D.E. 100, 115]**, Kamal Ahmed **[D.E. 101]**, Michael Levine **[D.E. 102]**, Ricardo Carmona **[D.E. 107]**, Valentine Yankson **[D.E. 112]**, Johnny Hagan **[D.E. 113]**, and Mabel Mireku **[D.E. 114]** (collectively "Consent Notices and Affidavits ").[3]

The putative class members claim that they are similarly situated, subjected to the same agreement, pay structure, rules, and policies and were required to perform the same basic job duties. Each of the above-noted individuals claim that upon commencing employment with Defendant, he/she was required to sign an "independent contractor" agreement and was not permitted to negotiate any of the terms. See Consent Notices.

The above-noted individuals further claim that all drivers had the same basic job duties, were subject to dispatch on the same basis, and had to comply with the same rules. Their individual affidavits contain the following similar allegations. Each work day, drivers would check in with a dispatcher through a centralized dispatch system, they were placed on a list, and waited at the warehouse for their assignments. Drivers were not compensated for waiting, which could take several hours, and dispatchers could refuse to assign work to drivers not at the warehouse. Once the dispatcher assigned a pick up or delivery, if the driver refused the assignment, he/she would be moved to the bottom of the list. Drivers were also in constant contact with the dispatcher, required to notify the dispatcher upon completion of the assignment and of any minor problems. See Consent Notices and Affidavits, *supra*. The above-noted individuals also claim that because they had to be at the warehouse to get work assignments, as a practical matter, they could not work for other companies and were dependent on Defendant for their livelihood. Id.

---

[3] Aissa Benaffane **[DE 117]** and Mohammed Chadli **[DE 118]** filed their Notices after the hearing on this Motion took place.

4

Defendant, on the other hand, argues that Plaintiffs are not similarly situated, and that their affidavits provide no credible indication that they have any personal knowledge of the work performed by any couriers other than in their unique location. **[D.E. 78]**. In support of its position, Defendant has filed the Declaration of Jacqueline Seguerra, Services Parts Logistics Transportation Division Manager for Defendant. Id. at Ex. A. In her Declaration, Ms. Seguerra attests that each driver/courier has executed an independent contractor agreement that governs the terms and conditions of his/her relationship with Defendant. Id. at ¶¶ 14-16.

On this basis, Defendant claims that its relationship with these individuals is not one of employer/employee. Defendant specifically argues that contrary to Plaintiff's Motion, Defendant did not have exclusive control over the courier/drivers. **[D.E. 78]**. According to Defendant, it has a long standing nationwide policy of prohibiting its dispatchers from exercising the exact type of control alleged in Plaintiffs' affidavits. Defendant further argues that even if taken as true, the facts alleged do not establish a common policy, plan or unlawful scheme; rather, they establish, at best, individual deviations from Defendant's policies. Id. In short, Defendant requests that the motion be denied because the Plaintiffs are not similarly situated and their alleged claims do not rise to the level of a nationwide collective action. This Court disagrees.

### III. Independent Contractors

Prior to addressing the specific requirements for the conditional certification of a class action, the undersigned shall briefly address the "independent contractor" issue raised by Defendant. Generally speaking, the issue of whether a proposed class is similarly situated is viewed based upon both the nature of the claims alleged and the defenses relevant thereto. Here, as noted above, Defendant's main argument is that Plaintiffs are independent contractors – who were not controlled by Defendant — fall

outside of the provisions of the FLSA. While this issue is not specifically before the Court on this Motion, it is instructive to briefly address these matters for present purposes. First, even though Plaintiffs may have signed an independent contractor agreement, they may still be employees for purposes of the FLSA. See Robicheaux v. Radcliff Material, Inc., 697 F. 2d 662 (5th Cir. 1983) (welders were found to be employees despite having signed independent contractor agreements). The fact that Defendant did not *intend* to create an employment may be irrelevant. See Donovan v. The New Floridian Hotel, Inc., 676 F. 2d 468 (11th Cir. 1982)(emphasis added). In other words, an employer cannot "saddle [a] worker with [a] status of independent contractor, thereby relieving itself of its duties under Fair Labor Standards Act, by granting him some legal powers where economic reality is that worker is not and never has been independently in business which the employer would have him operate." Mednick v. Albert Enterprises, Inc., 508 F. 2d 297 (5th Cir. 1975). Consistent with the above, the undersigned finds that Defendant's argument is not dispostive to the matter at hand.

### IV. Analysis

Among the FLSA's remedial provisions is the power granted to courts to authorize other similarly situated employees to opt-in and join a plaintiff in prosecuting his/her claims. 29 U.S.C. § 216(b). The District Court also has the authority to permit and/or supervise notice to similarly situated potential opt-in class members. Hipp v. Liberty Nat. Life Ins. Co., 252 F. 3d 1208 (11th Cir. 2001). Prior to issuing such an order, the court must determine whether there are other employees of the defendants who desire to "opt in" and who are "similarly situated." See generally, Dybach v. State of Fla. Dept. of Corrections, 942 F. 2d 1562 (11th Cir. 1991).

In the seminal case of Hipp v. Liberty Nat. Life Ins. Co., 252 F. 3d 1208, 1219 (11th Cir. 2001), the Eleventh Circuit set forth a two tier approach for determining whether potential plaintiffs are

similarly situated. Under Hipp, the standard of proof to be applied is a "lenient" one. Id. at 1217. In other words, the burden of proof is very low. Plaintiffs, through pleadings and other record evidence must establish that the putative "opt in" employees are similarly situated to them in their job descriptions and claims alleged. If that standard of proof is satisfied, the district court should grant "conditional certification," allowing notice and the opportunity to "opt-in." After discovery is completed, the opposing party may file a motion for decertification, upon which the court must reevaluate the "similarly situated" requirement and makes a factual determination as to whether the class is "similarly situated." The district court's second review is more stringent than the first. Id. at 1218. However, the two-tiered approach is a "suggest[ion]," not a "require[ment]." Id. at 1219. Therefore, the decision of whether to create an opt-in collection action under § 216(b) remains "soundly within the discretion of the district court." Id.

In determining whether the putative opt-in Plaintiffs are similarly situated, the Court must consider: (1) whether the plaintiffs all held the same job title; (2) whether they worked in the same geographical location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision maker; and (5) the extent to which the alleged violations are similar. See Dybach, 942 F.2d at 1567.

Upon review of the Motion, the Response, related pleadings, the affidavits, declarations and Notices of Consent to Join, the undersigned finds that Plaintiffs have made a substantial threshold showing as to Florida drivers for present purposes.

Here, it appears that all of the putative class members were drivers/couriers. Most of the putative class members worked at Florida locations. A handful worked at Virginia, New Jersey and

New York. All have worked for Defendant for at least three (3) years. As noted above, almost all aver that they were subjected to the same seven (7) day work schedules,[4] policies, agreements, payment schedules, etc. See Consent Notices.

To this end, the following chart reflects the relevant location and date of employment for the putative class members that have filed affidavits.

| Plaintiff | Start Year | Location | Location of Weekday Dispatcher[5] |
|---|---|---|---|
| Carrera | 1999 | FL | Atlanta, Georgia |
| Torres | 2001 | FL | Atlanta, Georgia |
| Fuentes | 2007 | FL | Atlanta, Georgia |
| Bell | 2003 | FL | Atlanta, Georgia |
| Spraggs | 2003 | FL | Atlanta, Georgia |
| Harris | 1998 | FL | Atlanta, Georgia |
| Lopez | 2002 | FL | Atlanta, Georgia |
| Morales | 2006 | FL | Atlanta, Georgia |
| Allen | 2000-2008 | FL | Atlanta, Georgia |
| Stevenson | 2002 | FL | Atlanta, Georgia |
| Amoako | 2000 | VA | Atlanta, Georgia |
| Barrant | 2007 | FL | Atlanta, Georgia |
| Oubihi | 2002 | VA | Atlanta, Georgia |

---

[4]The following putative class members claim to have worked less than seven (7) days per week: Harris worked between five and seven days; Allen worked five; Tejada worked between four and seven days per week; and Carmona worked six days per week.

[5]All dispatchers who assigned work to putative class members on evenings and weekends were located in Dallas, Texas. See Consent Notices.

8

| | | | |
|---|---|---|---|
| Estrada | 2000 | NJ | Atlanta, Georgia |
| Espinosa | 2004 | NY | Lyndhurst, NJ |
| Holguin | 2005 | NY | Lyndhurst, NJ |
| Perez | 2003 | NY | Lyndhurst, NJ |
| Araby | 2003 | VA | Atlanta, Georgia |
| Tejada | 2006 | NY | Lyndhurst, NJ |
| Okwesi | 1999 | VA | Atlanta, Georgia |
| Vittini | 2006 | NY | Lyndhurst, NJ |
| Vargas | 2004 | NY | Lyndhurst, NJ |
| Carmona | 2006 | NJ | Lyndhurst, NJ |
| Yankson | 2005 | VA | Lyndhurst, NJ |
| Hagan | 2007 | VA | Lyndhurst, NJ |
| Mireku | 2006 | VA | Lyndhurst, NJ |

The only discernible difference between the putative class members is the location of the weekday dispatcher. As reflected *supra*, during the weekdays, all Florida drivers and half of the Virginia drivers were dispatched from dispatchers located in Atlanta, Georgia. However, all drivers in New Jersey, New York, and half of the Virginia drivers were dispatched from Lyndhurst, New Jersey.

With respect to geographic location, SCS maintains a number of warehouse and dispatcher locations. It is not clear from Plaintiffs' pleadings and affidavits whether dispatchers in one location possess some degree of autonomy from those in other locations. See Reed v. Mobile County School System, 246 F.Supp.2d 1227, 1232 (S.D.Ala. 2003) (refusing to certify an FLSA class of employees at different campuses within a school system "[g]iven the experiential likelihood that various campuses enjoy considerable autonomy" and absent "evidence to the contrary"). However, when there is ample evidence that supports more than mere allegations of similarity, some courts have granted certification

9

despite certain differences in duties and location. See, e.g., Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233 (11th Cir. 2008)(finding that the district court did not abuse its discretion in certifying a collective action despite some differences because its findings were based on a complete and comprehensive record made twenty months into litigation).

Furthermore, absent a showing that the FLSA violations at the Fort Lauderdale location stem from a company-wide policy or practice, the denial of overtime compensation at one location does not readily suggest a company-wide pattern of denial at all locations. See Gonzalez v. Hair Club for Men, Ltd., Inc., No. 6:06-cv-1792-Orl-28JGG, 2007 WL 1079291 at *3 (M.D.Fla Apr. 9 2007)(denying Plaintiff's motion for conditional certification of a company-wide collective action when the affidavits failed to show that the alleged FLSA violations stemmed from a company-wide practice). See also Wynder v. Applied Card Sys., Inc., Slip Copy, 2009 WL 3255585 (S.D.Fla. 2009)(limiting the scope of notice of collective action to employees at the Boca location because Plaintiff failed to offer any evidence that labor practices at issue extended beyond the Boca location)  Here, Plaintiffs seek to certify a collective action consisting of employees who work under different dispatchers and in remote locations who have been denied overtime compensation for unknown reasons. While the submitted affidavits describe nearly identical job duties and pay structure, Plaintiffs have not provided a sufficient factual basis for concluding that all SCS drivers are similarly situated for purposes of certification. Because there may exist policies and procedures that vary from dispatch center to dispatch center, the employees dispatched from the New Jersey location may not be sufficiently similar to warrant their inclusion in this action. Simply put, we do not know enough based on the current record to expand this collective action to those drivers. Likewise, it would serve no purpose to include only Virginia drivers who were dispatched from Atlanta during the weekdays, to the exclusion of those who were dispatched

out of New Jersey. For present purposes, their inclusion may serve to confuse and complicate this matter, and will likely result in the filing of many dissimilar claims. In light of the foregoing, and considering the totality of the circumstances, a nationwide action including drivers from New Jersey, New York and Virginia is not appropriate based upon the current record.

Consistent with the liberal standard noted above and with the record in this case, the undersigned finds that Plaintiffs have met their burden as to a Florida collective action and as such, it is **RESPECTFULLY RECOMMENDED** that the Motion for an Order Permitting Supervised Notice of this Action to Potential Opt-In Plaintiffs and Conditional Certification of this Case as a Collective Action **[D.E. 24]** be **GRANTED** on a preliminary basis to persons who worked as drivers/couriers (classified as "independent contractors") in Florida within the last three (3) years, *without prejudice* to Defendant filing a motion for decertification upon the completion of discovery. It is **FURTHER RESPECTFULLY RECOMMENDED** that Notice be limited to Florida.

## V. Notice

As part of their Motion, Plaintiffs have filed a proposed Notice. **[D.E. 33-3]**. Defendants have expressed the following objections to the conditional certification of this case as a collective action: (1) the authorized Notice should be made neutral with respect to the claims and defenses raised by the parties, (2) the proposed Notice contains a detailed description of Plaintiffs' allegations, but merely mentions that Defendant has "denied any wrongdoing to date," (3) the document directs potential class members only to Plaintiffs' counsel,[6] and (4) the Notice does not advise that potential class members

---

[6]Defendant suggests that the Notice be modified to include the names of both counsel (Plaintiff and Defendant)or direct the potential class members to contact the Clerk of Court.

can proceed without an attorney or can contact counsel of their choice. **[D.E. 78]**.

Upon review of the Defendant's concerns with respect to the neutrality and clarity of the proposed Notice **[D.E. 33-3]**, the undersigned finds that most are well-founded. Accordingly, it is **RESPECTFULLY RECOMMENDED** that the proposed Notice be modified as follows: (1) include additional information regarding the defenses raised by Defendants, (2) clarify potential plaintiffs' options as to retaining counsel, (3) the Notice can continue to direct potential plaintiffs to Plaintiffs' counsel, however, defense counsel's name should be listed for informational purposes. The parties should be required to work together to accomplish these modifications with the goal being both neutrality and clarity.

Pursuant to 28 U.S.C. § 636(b)(1)( c), the parties may file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Court, within fourteen (14) days of receipt. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F. 2d 1144, reh'g denied, 7 F. 3d 242 (11thCir. 1993) (*en banc*); LoConte v. Dugger, 847 F. 2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida on this 2nd day of July 2010.

                                                    **WILLIAM C. TURNOFF**
                                                  **UNITED STATES MAGISTRATE JUDGE**

cc:    Hon. Joan A. Lenard
       Counsel of Record