UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60263-CIV-LENARD/TURNOFF

**ERNESTO CARRERA and**
**CHRISTOPHER STEPHENSON,**

    Plaintiffs,

v.

**UPS SUPPLY CHAIN SOLUTIONS,**
**INC.,**

    Defendant.
_____/

### ORDER ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (D.E. 127) AND GRANTING PLAINTIFF'S MOTION FOR SUPERVISED NOTICE AND CONDITIONAL CERTIFICATION AS FLSA COLLECTIVE ACTION (D.E. 33)

**THIS CAUSE** is before the Court on the Report and Recommendation of Magistrate Judge William C. Turnoff ("Report," D.E. 127), issued on July 6, 2010. On July 16, 2010, Defendant UPS Supply Chain Solutions, Inc. ("SCS") filed its limited objections to the Report ("SCS's Objections," D.E. 130). No response to SCS's Objections was filed. On July 20, 2010, Plaintiffs filed their objections to the Report ("Plaintiffs' Objections," D.E. 131), to which SCS filed its response ("SCS's Response," D.E. 141), on August 6, 2010. Having considered the Report, SCS's Objections, Plaintiffs' Objections, SCS's Response, the transcript of the hearing before the Magistrate Judge on June 2, 2010, the related pleadings, and the record, the Court finds as follows.

I. **Background**

This is an action for recovery of overtime and minimum wage under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiffs Ernesto Carrera ("Carrera") and Christopher Stephenson[1] filed their initial Complaint in this action on February 23, 2010. (See D.E. 1.) On March 15, 2010, Carrera filed his Amended Collective Action Complaint ("Complaint," D.E. 23).

Defendant SCS is a subsidiary of United States Parcel Service, Inc., and a sister company to the UPS "Brown" package delivery company. SCS defines itself as a fully-integrated logistics company that manages other companies' supply chains through a worldwide network of warehousing, freight forwarding, customs brokerage, and transportation entities. (See Seguerra Decl., D.E. 78-1 at 2-3.) As part of this network, SCS operates hundreds of distribution centers throughout the United States and abroad. (Id.) In order to transport its customers' products from the assembly line to their end destination, SCS uses a variety of independent contractors.

Carrera has worked as a driver or independent contractor courier[2] for SCS since July 1999. (See Carrera Aff., D.E. 23-1 at ¶ 3.) As a driver, Carrera provided pick-up and delivery services for SCS's Service Parts Logistics Unit and its customers. (Id. at ¶¶ 3,7.) Carrera worked out of two SCS warehouses in Florida, one in Fort Lauderdale and one in

---

[1] On January 7, 2011, Stephenson withdrew his consent to join in this action. (See D.E. 153.)

[2] The Parties employ different terminology to describe Plaintiffs' position.

Miami. Nevertheless, all of his work was assigned by SCS dispatchers who worked in other states. (Id. at ¶¶ 4,9.) The dispatchers that assigned work to Carrera on evenings and weekends were located in Dallas, Texas while he received work from dispatchers in Atlanta, Georgia during the week. (Id. at ¶ 9.) In order to be eligible to receive a work assignment, Carrera would "check in" with a dispatcher and put his name on a list of available drivers. (Id. at ¶ 10.) Once his name reached the top of the list, the dispatcher would call him with the proposed assignment, which he could either accept or decline. (Id. at ¶¶ 10, 13.) Carrera alleges that he would often have to wait hours for an assignment and would have to wait at or near the warehouses. In accordance with SCS's policy, dispatchers could refuse to assign work to drivers located more than fifteen minutes away from a pick-up or drop-off site. (Id. at ¶ 10.) Additionally, he could not decline work as a practical matter because those drivers who declined assignments were dropped to the bottom of the list of available drivers. (Id. at ¶ 13.) Carrera asserts that he was not paid for the time he spent waiting and could not regularly work for any other delivery company due to his having to be in close proximity to SCS's warehouse. (Id.) Carrera claims that during this period he worked full time, seven days a week, and routinely worked over forty hours a week. (Id. at ¶ 3.) Carrera also claims he was required to communicate periodically with the dispatcher regarding any delays or issues with the delivery. (Id. at ¶ 14.) Despite this fact, Carrera and others were forced to sign "independent contractor" agreements and were paid using a non-negotiable "piece-rate" method in which they received either (1) a lump sum amount for deliveries within a certain

3

radius of the pick-up location or (2) an amount per mile for stops outside of that radius.  (Id. at ¶¶ 6, 19-20.)

The Complaint seeks recovery for SCS's failure to pay overtime (Count I) and minimum wage (Count II) pursuant to the FLSA.  The Complaint further seeks to bring this lawsuit on behalf of "all current and former employees similarly situated to Plaintiffs, who were non-exempt 'piece-rate' paid delivery drivers that earned less than $100,000 in compensation from Defendant in one or more years during the applicable statute of limitations, and who worked for Defendants at their offices around the country, during the time period of February 2007 through current."  (Complaint at ¶ 10.)

On March 19, 2010, Plaintiffs filed their Motion for an Order Permitting Supervised Notice of this Action to Potential Opt-In Plaintiffs and Conditional Certification of this Case as a Collective Action ("Plaintiffs' Motion," D.E. 33).[3]  Plaintiffs' Motion seeks conditional certification of a class of all current and former delivery drivers who worked overtime and regular hours for SCS within the last three years and who did not receive minimum wage and overtime payment.  The Motion also seeks an Order requiring SCS to provide Plaintiffs with detailed information regarding all similarly situated drivers and approval to send notice to all similarly situated drivers.  In support, Plaintiffs' Motion attaches affidavits from drivers

---

[3] The Court referred Plaintiffs' Motion to the Magistrate Judge on March 22, 2010. (See D.E. 35.)

who have consented to join this action.[4] On May 6, 2010, SCS filed its response in opposition arguing a nationwide collective action is not appropriate in this case because Plaintiffs are independent contractors who are not similarly situated. (See D.E. 78.) SCS's response attaches the declaration of Jackie Seguerra ("Seguerra"), Service Parts Logistics Transportation Division Manager at SCS. (See Seguerra Decl., D.E. 78-1.) SCS also attaches affidavits submitted from several dispatchers who are responsible for assigning and coordinating deliveries to drivers.[5] On May 13, 2010, Plaintiffs filed their reply in support of conditional certification and notice. (See D.E. 87.)

On June 2, 2010, the Magistrate Judge held a hearing on Plaintiffs' Motion. (See Tr. of Hearing, D.E. 119.) On July 6, 2010, the Magistrate Judge issued his Report recommending Plaintiffs' Motion be granted in part.

### II. Magistrate Judge's Report and Objections

The Report recommends the Court conditionally certify a collective action limited to those "persons who worked as drivers/couriers (classified as "independent contractors") in Florida within the last three (3) years, *without prejudice* to Defendant filing a motion for decertification upon the completion of discovery." (Report at 11.) The Report recommends

---

[4] Attached to Plaintiffs' Motion were the affidavits of Carrera, Stephenson, Wayne Allen, Noel Bell, Norma Torres, and Frederick Spraggs. (See D.E. 33-1, 33-2.)

[5] SCS's response attaches affidavits from Krissy Dillard, Thomas Bryce, Mikki Jean Caulder, Birda Gardner, and Annalisa Draves, all of whom are currently employed as dispatchers in SCS's Atlanta dispatch office. (See D.E. 78-2.) SCS has four dispatch offices located nationwide including in Chicago, Dallas, New Jersey, and the one in Atlanta. (See Plaintiffs' Supplemental Information in Support of Objections, D.E. 137-1 at 1-2.)

the Court limit notice of the action to Florida and that the proposed Notice be modified to include additional information regarding the defenses raised, clarify potential options as to retaining counsel, and list defense counsel's name for informational purposes in addition to listing Plaintiffs' counsel.  (Id. at 12.)  The Magistrate Judge's recommendation is based upon his findings that most of the putative opt-in plaintiffs worked at Florida locations and the "only discernible difference between the putative class members is the location of the weekday dispatcher."[6]  (Report at 7, 9.)  The Report notes that during the workweek, all Florida drivers and half of the putative opt-in plaintiffs from Virginia received work from dispatchers in Atlanta.  At the same time, all of the putative opt-in plaintiffs located in New Jersey, New York, and the rest of the drivers in Virginia received work from dispatchers in Lyndhurst, New Jersey.  (Id. at 9.)  The Report noted the possibility that dispatchers in different locations might follow different practices or enjoy differing degrees of autonomy. (Id.) Furthermore, the Report found that, "absent a showing that the FLSA violations at the Fort Lauderdale location stem from a company-wide policy or practice, the denial of overtime compensation at one location does not readily suggest a company-wide pattern of denial at all locations." (Id. at 10.)  Therefore, the Magistrate Judge concluded that because different dispatch centers may employ different policies and "we do not know enough based on the current record to expand this collective action" to other drivers nationwide, a class

---

[6] The Report notes that additional opt-in plaintiffs continued to file consents to join the action but expressly limited his findings based on the state of the record as of June 2, 2010, the date of the hearing.  (Report at 2 n.1.)

comprised of Florida drivers was most appropriate. (Id. at 10-11.)

SCS objects to the Report on the grounds that the Magistrate Judge did not go far enough. First, SCS contends the putative class is not similarly situated because SCS's nationwide policy governing dispatcher interaction with drivers required dispatchers to refrain from exercising control over the drivers. Thus, whether or not any given driver is similarly situated to another driver requires comparison of which dispatchers the driver dealt with and whether that dispatcher followed SCS's policy. SCS states that it employed approximately 120 different dispatchers nationally over the relevant time period and any isolated deviations from policy were as likely to occur based on the identity of the dispatcher in addition to any differences between dispatch center location. Second, SCS contends Plaintiffs' claims are not susceptible to resolution through a collective action because the Court must conduct an individualized inquiry into whether each plaintiff was properly classified as an independent contractor. SCS argues the Court will be required to conduct a highly individualized inquiry into such factors as the nature and degree of SCS's control, the opt-in plaintiff's opportunity for profit or loss, the opt-in plaintiff's investment in equipment or materials, whether the service rendered requires a special skill, the degree of permanency of the relationship, and whether the service is an integral part of SCS's business. Thus, SCS argues the Court should extend the Magistrate Judge's recommendation even further and decline to certify a collective action.

Plaintiffs object to the Report on the grounds that it: (1) misinterprets and relies upon

7

irrelevant facts; (2) misapplies the law in the Eleventh Circuit; and (3) contradicts the letter, spirit, and intent of the collective action mechanism by encouraging multiple "copy cat" lawsuits throughout the country. First, Plaintiffs contend that "the determination of where the dispatchers are located, and the potential of differentiating policies and procedures, is not relevant to the fact that the Defendant improperly classified, and continues to classify, all its couriers/drivers as independent contractors." (Plaintiffs' Objections at 3.) In essence, Plaintiffs contend SCS undisputedly employs a nationwide policy of wrongfully classifying its drivers as independent contractors as evidenced by the fact that identical lawsuits have been filed elsewhere.[7] Second, Plaintiffs contend the Magistrate Judge improperly employed

---

[7] Plaintiffs refer to two other lawsuits. The first is Labrie v. UPS Supply Chain Solutions, Inc., a previously certified collective action in California. The district court in Labrie conditionally certified a nationwide collective action on behalf of all current or former drivers who worked for SCS in any state as an "independent contractor" during the previous three years. See Labrie, 2009 WL 723599 (N.D. Cal. 2009). The Parties in that case conducted discovery and subsequently settled. The Labrie case involved approximately 600 plaintiffs.

The second case is Dunakin v. United Parcel Services Supply Chain Solutions, Case No. 10-381-KI (D. Oregon). That case was filed on April 6, 2010, after the original Complaint in this case was filed, and remains pending. SCS subsequently moved pursuant to 28 U.S.C. § 1407 to transfer the Dunakin action to this Court however the United States Judicial Panel on Multidistrict Litigation denied that request on August 6, 2010. (See D.E. 142.) The plaintiffs in Dunakin have also filed a Request for Judicial Notice Regarding Status (D.E. 138) on July 30, 2010. The Dunakin plaintiffs' motion is unopposed and seeks judicial notice of the MDL proceedings, the docket activity in the Dunakin action, and the fact that the Dunakin action currently consists of at least 537 SCS drivers from 30 different states, including 34 drivers from the state of Florida. (See D.E. 138 at 2.) As of the date of this Order, a collective action has not been certified in the Dunakin action.

Rule 201 of the Federal Rules of Evidence governs judicial notice of "adjudicative facts," or the facts of the particular case. Fed. R. Civ. P. 201(a) & advisory committee's Note to Subdivision (a). A judicially noticed fact "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

a more stringent analysis of whether putative opt-in plaintiffs were similarly situated than is recommended by Eleventh Circuit case law. Finally, Plaintiffs suggest the Magistrate Judge erred because limiting the collective action to Florida will only encourage "copy cat" litigation. SCS's Response reiterates the arguments made in objection to the Report.[8]

### III.    Standard of Review

Upon receipt of the Report and the objections by both sides, the Court must now "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see FED. R. CIV. P. 72(b)(3). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. In making its determination, the district court is given discretion and "is generally free to employ the magistrate judge's findings to the extent that it sees fit." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1245 (11th Cir. 2007).

### IV.    Discussion

The FLSA permits collective actions against employers brought by any employee "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C.

---

questioned." Fed. R. Civ. P. 201(b). Courts enjoy discretion in determining whether to take judicial notice where the request is from a non-party. Fed. R. Civ. P. 201(c). Accordingly, the Dunakin plaintiffs' Request for Judicial Notice Regarding Status (D.E. 138) is **GRANTED** and the Court takes judicial notice of the MDL proceedings and existence and status of the Oregon proceedings.

[8]     The Parties also filed various notices of supplemental authority on the conditional certification issue. (See D.E. 123, 151, 155.)

9

§ 216(b). Thus, "to maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated." Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1258 (11th Cir. 2008) (citing Albritton v. Cagle's, 508 F.3d 1012, 1017 (11th Cir. 2007)). "The FLSA itself does not define how similar the employees must be" before a collective action may proceed and the Eleventh Circuit has not adopted a precise definition of the term. Morgan, 551 F.3d at 1259. Nevertheless, "the district court should satisfy itself that there are other employees of the [employer] who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Dybach v. Fla. Dept. of Corr., 942 F.2d 1562, 1567 (11th Cir. 1991). Several factors for consideration may include whether plaintiffs: (1) all held the same job title; (2) worked in the same geographical location; (3) allege violations during the same time period; (4) were subjected to the same policies and practices; and (5) allege similar violations. See id. Whether or not plaintiffs worked in different geographical locations is "not conclusive." Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001); see also, Posada v. Page Brothers Assocs., Inc., 2010 WL 529407 at *3 (S.D. Fla. 2010); Pendlebury v. Starbucks Coffee Co., 2005 WL 84500 (S.D. Fla. 2005); Epps v. Oak Street Mortgage LLC, 2006 WL 1460273 at *6 (M.D. Fla. 2006). The inquiry is whether or not employees are similarly situated, "not whether their positions are identical." Morgan, 551 F.3d at 1260.

Section 216(b) further requires that any participants in a collective action must affirmatively "opt-in" to the lawsuit by giving consent. 29 U.S.C. § 216(b) ("No employee

shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"). "Therefore, the importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees." Morgan, 551 F.3d at 1259 (citing Hipp, 252 F.3d at 1218).

Whether or not to certify a collective action is "soundly within the discretion of the district court." Hipp, 252 F.3d at 1219. Nevertheless, the Eleventh Circuit has suggested a two-tiered approach for making such a determination. Id. The first stage is called the "notice stage" and involves a limited inquiry, based only on the pleadings and any affidavits submitted, as to whether notice should be given to potential opt-in plaintiffs. Id. at 1218 (citing Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995)). Plaintiffs have the burden of showing a "reasonable basis for [their] claim that there are other similarly situated employees" but the Eleventh Circuit has routinely characterized it as a "fairly lenient" standard. Morgan, 551 F.3d at 1260-61 (citing Anderson v. Cagle's, 488 F.3d 945, 952 (11th Cir. 2007)); see also, Hipp, 252 F.3d at 1214, 1218, 1219; Grayson v. K Mart Corp., 79 F.3d 1086, 1096-97 (11th Cir. 1996). "The first step is also referred to as conditional certification since the decision may be reexamined once the case is ready for trial." Morgan, 551 F.3d at 1261. The second stage is less lenient and is triggered by an employer's motion for decertification. Id. This second stage usually comes after the parties have conducted discovery and the court has much more information with which to determine

11

the factually-driven question of whether plaintiffs are similarly situated. See id.; Hipp, 252 F.3d at 1218.

As of the date of this Order, there are thirty-one putative opt-in plaintiffs in this action.[9] Of these thirty-one plaintiffs, ten worked at a warehouse in Ft. Lauderdale, Florida, eleven worked at a warehouse in Herndon, Virginia, six worked at a warehouse in Elmsford, Virginia, two worked at a warehouse in Lyndhurst, New Jersey, one worked at a warehouse in Beltsville, Maryland, and another worked at a warehouse in Mechanicsburg, Pennsylvania. Regardless of warehouse location or which dispatch center a plaintiff received work from during the week, the submitted affidavits are nearly identical.

All of the affidavits provide that the plaintiffs were drivers for SCS and it appears they

---

[9] The following plaintiffs have filed consents to join this action (with their respective warehouse location in parenthesis): Ernesto Carrera (D.E. 1, 33-1) (Miami and Ft. Lauderdale, FL); Noel Bell (D.E. 10, 30) (Ft. Lauderdale, FL); Frederick Spraggs (D.E. 11, 28) (Ft. Lauderdale, FL); Everald Harris (D.E. 12, 27) (Ft. Lauderdale, FL); Juan Fuentes (D.E. 9, 26) (Ft. Lauderdale, FL); Wayne Allen (D.E. 5, 15, 31) (Ft. Lauderdale, FL); Felix Morales (D.E. 6, 14, 24) (Ft. Lauderdale, FL); Norma Torres (D.E. 7, 29) (Ft. Lauderdale, FL); Diego Lopez (D.E. 13, 25) (Ft. Lauderdale, FL); Cesar Estrada (D.E. 36) (Lyndhurst, NJ); John Barrant (D.E. 37) (Ft. Lauderdale, FL); Michael Omaoko (D.E. 46) (Herndon, VA); Juan Espinosa (D.E. 72) (Elmsford, NY); Badia Holguin (D.E. 74) (Elmsford NY); Luis Perez (D.E. 75) (Elmsford, NY); Saleem Araby (D.E. 76) (Herndon, VA); Alejandro Tejada (D.E. 77) (Elmsford, NY); Maxwell Okwesi (D.E. 81) (Herndon, VA); George Vittini (D.E. 83) (Elmsford, NY); Sabil Salatin (D.E. 85) (Herndon, VA); Juana Vargas (D.E. 100, 115) (Elmsford, NY); Kamal Ahmed (D.E. 101) (Herndon, VA); Ricardo Carmona (D.E. 107) (Lyndhurst, NJ); Valentin Yankson (D.E. 112) (Herndon, VA); Johnny Hagan (D.E. 113) (Herndon, VA); Mabel Mireku (D.E. 114) (Herndon, VA); Aissa Benaffane (D.E. 117) (Herndon, VA); Mohammed Chadli (D.E. 118) (Herndon, VA); Magdi Abdalla (D.E. 120) (Herndon, VA); Seif Madkour (D.E. 121) (Mechanicsburg, PA); and Abu Bah (D.E. 132) (Beltsville, MD).

The following opt-in plaintiffs have since withdrawn their consents to join and are no longer a part of this lawsuit: Christopher Stephenson (D.E. 153); Vilma Tolentino (D.E. 128); Hassan Oubihi (D.E. 124); and Michael Levine (D.E. 122).

all held the same job title as independent contractor couriers. They all state that they were paid according to a non-negotiable "piece-rate" method. All of the affidavits indicate plaintiffs were required to sign an "independent contractor" employment agreement, which required drivers *inter alia* to: (1) follow SCS's instructions and rules, including those contained in memoranda sent to the drivers; (2) communicate with dispatchers in order to receive work and inform them of any delays or issues; (3) use certain SCS forms and paperwork such as bills of lading, airway bills, and manifests; (4) not charge customers directly or collect money; (5) maintain a professional appearance and behavior; and (6) provide their own vehicle, gas, insurance, and other expenses. The alleged violations all occurred within the last three years and include identical claims, namely that SCS's policy of classifying drivers as independent contractors and denying them pay violates the FLSA. Although the putative opt-in plaintiffs worked at warehouses in different geographical locations, that fact is not dispositive of whether they are similarly situated at the notice stage. This is especially true where all of the affidavits indicate plaintiffs performed substantially the same work. All of the opt-in plaintiffs provided pick-up and delivery services in various parts of the country based on work assignments from regional dispatchers. The affidavits also set forth that plaintiffs worked full time, in most cases seven days a week, and routinely worked more than forty hours.

The Court recognizes variations between different dispatch centers may exist. The opt-in plaintiffs in this case all received work assignments from either the dispatch centers

in Lyndhurst or Atlanta during the week, and from Dallas during the evenings and weekends. As the Magistrate Judge noted, it is too difficult to tell whether there are substantial differences based on the current record. This suggests determination at the decertification stage once the Court has the benefit of discovery may be preferable. With regard to the Atlanta dispatch center, the affidavits submitted by SCS's dispatchers tend to demonstrate they did not stray from a very defined policy regarding their interactions with the drivers. (See D.E. 78-2.) Rather, it appears from the affidavits submitted thus far that SCS had a very detailed policy and procedure in place at least since 2005 regarding its handling of the drivers and it is this policy that is the source of Plaintiffs' complaint. Other courts have suggested a pattern or standard practice of denying compensation alone could satisfy the "similarly situated" requirement for certifying a collective action under § 216(b). See Reed v. Mobile County Sch. Sys., 246 F. Supp. 2d 1227, 1233-34 (S.D. Ala. 2003).

The Court also recognizes the issue of whether the opt-in plaintiffs are properly classified as independent contractors or SCS's employees requires an individualized analysis of such factors as the nature and extent of SCS's control, the plaintiff's opportunity for profit or loss, the plaintiff's investment, whether the services required a special skill, the permanency of the relationship, and whether the service is an integral part of SCS's business. Santelices v. Cable Wiring, 147 F. Supp. 2d 1313, 1319 (S.D. Fla. 2001); see also, Freund v. Hi-Tech Satellite, Inc., 185 Fed. Appx. 782, 783 (11th Cir. 2006). Many of the issues central to this determination can be resolved or addressed as part of a collective action and

14

perhaps in a much more efficient manner than would otherwise be the case.

Finally, the Court notes that should discovery prove the putative opt-in plaintiffs are not similarly situated based on differences between dispatch centers, SCS may always file a motion to decertify thus triggering the second stage of analysis. As a result, the Court finds that under the Eleventh Circuit's lenient notice stage inquiry, Plaintiffs have offered sufficient proof that other similarly situated plaintiffs exist and are interested in joining this action. Thus, the Court conditionally certifies this case as a collective action on behalf of all current or former drivers who worked for Defendant or its predecessor companies, in any state in the United States, as an "independent contractor," at any time within the last three years and did not receive minimum wage and/or overtime compensation.

As to the form of the Notice issued to prospective opt-in plaintiffs, neither side objected to the Magistrate Judge's modifications to the proposed Notice. (See D.E. 33-3.) Thus, the Parties are directed to jointly revise the proposed Notice in accordance with the Magistrate Judge's recommendations and with the goals of neutrality and clarity. Accordingly, consistent with this Order, it is hereby **ORDERED AND ADJUDGED** that:

1. The Magistrate Judge's Report and Recommendation (D.E. 127), issued on July 6, 2010, is **ADOPTED in part**;

2. Consistent with this Order, Plaintiffs' Motion for an Order Permitting Supervised Notice of this Action to Potential Opt-In Plaintiffs and Conditional Certification of this Case as a Collective Action (D.E. 33) is **GRANTED**;

15

3. The Court conditionally certifies this case as a collective action on behalf of all current or former drivers who worked for Defendant or its predecessor companies, in any state in the United States, as an "independent contractor," at any time within the last three years and did not receive minimum wage and/or overtime compensation. The Parties are directed to make the recommended revisions to the proposed Notice and Consent forms and file revised versions with the Court within fourteen (14) days of the date of this Order;

4. Defendant is directed to provide Plaintiffs' counsel with the names, addresses, e-mail addresses, and telephone numbers of potential plaintiffs within thirty (30) days of the date of this Order;

5. The Parties shall confer and undertake efforts to avoid the unnecessary production of information or issuance of notice related to those potential plaintiffs whose claims were resolved as part of the <u>Labrie</u> action or whose claims are pending as part of the <u>Dunakin</u> action;

6. The Request for Judicial Notice Regarding Status (D.E. 138), filed on July 30, 2010, by the plaintiffs in the <u>Dunakin</u> action is **GRANTED** to the extent it is no longer moot;

7. Plaintiffs Unopposed Motion to Extend the Discovery Deadline and Remaining Pretrial and Trial Deadlines (D.E. 160), filed on March 24, 2011,

is **GRANTED**, Defendant's Motion to Extend Trial and Pretrial Deadlines (D.E. 150), filed on December 30, 2010, is **DENIED AS MOOT**; and Defendant's Motion for Status Conference (D.E. 164), filed on March 24, 2011, is **DENIED AS MOOT**. The Parties shall have fourteen (14) days from the date of this Order to file a revised joint scheduling report and form setting forth revised dates for any remaining deadlines.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 31st day of March, 2011.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**